**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARRY LOGUE, Administrator of the
Estate of Tisha S. Logue, deceased,

  Plaintiff,

  v.

CAPITAL HEALTH SYSTEMS, INC.,
et al.,

  Defendants.

Civil Action No. 12-3367 (MAS) (LHG)

MEMORANDUM OPINION

**SHIPP, District Judge**

This matter comes before the Court upon Defendant Yoganand Deendyal's ("Deendyal") Motion to Dismiss. (Deendyal MTD, ECF No. 18.) Defendants Gary A. Brown ("Brown") and Phyllis O'Neill ("O'Neill") filed an additional Motion to Dismiss. (Brown MTD, ECF No. 21.) In response, Plaintiff[1] filed a Cross-Motion to Amend and Opposition with regard to each Motion to Dismiss. (Pl.'s Opp'n to Deendyal, ECF No. 22; Pl.'s Opp'n to Brown, ECF No. 26.) Defendant Deendyal filed a Reply Brief in Support of his Motion to Dismiss. (Deendyal Reply, ECF No. 25.) Defendants Brown and O'Neill filed a Reply in Support of their Motion to Dismiss, and in Opposition to Plaintiff's Cross Motion to Amend. (Brown Reply, ECF No. 27.)

---

[1] The instant action was initially brought by Helen Logue Goss, as the Administrator of her daughter's, Tisha S. Logue's ("Logue"), estate. However, Helen Logue Goss died during the pendency of this action. Garry Logue has been substituted as the Plaintiff pursuant to Rule 25(a). (ECF No. 37.)

The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and other good cause shown, Defendants' Motions to Dismiss are DENIED. Plaintiff's Motions to Amend are MOOT.

## I. Background

As Defendants' challenges to the Complaint are predicated upon the sufficiency of the Plaintiff's Affidavits of Merit, only a brief recitation of the facts is necessary. Plaintiff's allegations are as follows. (Compl., ECF No. 1.) On June 24, 2010, at approximately 1:48 a.m., Logue sought emergent care from Capital Health Regional Medical Center. (Compl. ¶ 51.) At the time, Logue was 33 years old and allegedly suffered from depression and a history of substance abuse. (Compl. ¶ 52.) Logue was ultimately discharged from the screening center at 3:50 a.m. (Compl. ¶ 72.) At 12:18 p.m. on the same date, "EMS from Capital Health MICU was dispatched to Ms. Logue's home after Ms. Logue's brother had called after finding Ms. Logue passed out on her bed." (Compl. ¶ 74.) At 1:52 p.m., Logue "died from cardiac arrest due to a drug overdose . . . ." (Compl. ¶ 76.) Plaintiff alleges several counts of "Negligence/Professional Negligence." Specifically, Count III alleges Negligence/Professional Negligence against Brown; Count IV alleges same against Deendyal; Count V alleges same against O'Neill; finally, Plaintiff alleges claims against all Defendants under the Wrongful Death Act, N.J. Stat. Ann. 2A:31-1, *et seq.* (Compl.)

## II. Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a

2

claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. Analysis

### A. Plaintiff's Affidavits of Merit

#### 1. Parties' Positions

Plaintiff filed two Affidavits of Merit. Plaintiff filed an Affidavit of Merit from Kenneth Glass, Ph.D. ("Glass"), with the Complaint filed on June 5, 2012. (ECF No. 1-1, Ex. D. ("Glass Affidavit")). Glass' Affidavit provides that: 1) he has a doctorate degree in clinical psychology; 2) he has practiced clinical psychology for over eighteen years; and 3) in his professional opinion, to a reasonable degree of professional certainty, he concludes Defendants' conduct fell below, and deviated from, the accepted standard of psychological and professional care. *Id.* Specifically, Glass's Affidavit states that in his "professional opinion, to a reasonable degree of psychological and professional certainty, that the aforementioned deviations from the accepted standard of . . . care . . . were a contributing factor[] in causing the death of Tisha Logue." *Id.*

Plaintiff also provided an Affidavit from Marquita S. Williams, Ph.D., MA., Ed.M. ("Williams"). (Pl.'s Opp'n to Deendyal, Ex. B ("Williams Affidavit").) Williams has practiced psychology for over 19 years. *Id.* Williams offered an identical opinion to that of Glass. Specifically, Williams found that the Defendants' care and treatment "fell below and deviated from the accepted standard of psychological and professional care." *Id.* Similarly, she stated that these "deviations . . . were a contributing factor[] in causing the death of Tisha Logue. *Id.*

Defendant Deendyal "is Board Certified in Internal Medicine and was practicing in the specialty of Emergency Medicine in the Emergency Department of Capital Health System ("CHS") on June 24, 2010." (Deendyal's MTD 1.) Deendyal argues that the Affidavits of Merit are insufficient.

4

By way of Answer filed on July 9, 2012, Defendant Brown stated that he is a licensed physician who is certified in psychiatry; Defendant O'Neill provided that she is a licensed nurse. (CHS Answer, ¶¶ 21-22, 28, ECF No. 4.) Brown and O'Neill argue that "Dr. Glass and Dr. Williams, lacking a medical license and any board certifications, may not render an affidavit of merit against Dr. Brown for the neurologic and psychiatric care that he provided to Ms. Logue in this case" nor may they "render an affidavit of merit against Ms. O'Neil[l] for the nursing care she provided." (Brown MTD 4.)[2] Plaintiff argues that the Affidavits of Merit are sufficient, and alternatively that leave to amend the pleadings should be granted. (Pl.'s Opp'n to Deendyal; Pl.'s Opp'n to Brown.)

### a. Deendyal's Motion to Dismiss

Deendyal asserts that neither affidavit provided was that of an "equivalently credentialed" physician, since Deendyal is Board Certified in Internal Medicine, and specializes in Emergency Medicine. (Deendyal MTD 1.) Plaintiff argues that "while defendant Dr. Deendyal is licensed in one area of medicine, he practices in other areas and his conduct clearly was in the area of 'psychological evaluation' at the time that he evaluated Ms. Logue." (Pl.'s Opp'n to Deendyal 7.) Plaintiff alleges that Deendyal conducted a psychological assessment of Logue. (*Id.* 3.) Accordingly, Plaintiff argues that that the affidavits served from psychologists are factually appropriate. (*Id.i* 7.)

### b. Brown and O'Neill's Motion to Dismiss

Brown is "a licensed physician" who "has been board certified in neurology and psychiatry by the American Osteopathic Association since 1993." (Brown MTD 3.) O'Neill is a

---

[2] The spelling of Defendant O'Neill's name varies throughout the Motion to Dismiss. (Compare Brown MTD at ¶ 1 to ¶ 3. For purposes of consistency, the Court will refer to her as "O'Neill" in order to comport with her name as captioned in the instant matter.

.5

nurse. (Brown MTD 4.) Brown and O'Neill similarly argue that Plaintiff's affiants are not "equivalently qualified." (Brown MTD 6.) Plaintiff opposes.

### B. Standard

The controlling statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c. 17 (C.2A:53A-41). In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

N.J. Stat. Ann. § 2A:53A-27.

Furthermore, N.J. Stat. Ann. § 2A:53A-41 provides that "[i]n an action alleging medical malpractice, a person shall not . . . execute an affidavit pursuant to the provisions of P.L.1995, c. 139 (C.2A:53A-26 et seq.) on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the . . . criteria" outlined therein.

6

## C. Application

"In the early stages of a medical malpractice action, a plaintiff must provide an affidavit from an equivalently credentialed physician attesting 'that there exists a reasonable probability that the' defendant physician's treatment 'fell outside acceptable professional' standards." *Buck v. Henry*, 207 N.J. 377, 382 (2011) (internal citation omitted). "Under the Affidavit of Merit statute . . . the failure to file an appropriate affidavit within the statutory time limits may result in dismissal of even meritorious cases." *Id.* The Affidavit of Merit Statute sought to strike a "fair balance between preserving a person's right to sue and controlling nuisance suits." *Palanque v. Lambert-Woolley*, 168 N.J. 398, 404 (2001).

> In professional malpractice actions plaintiffs are required to provide an affidavit from an appropriate licensed professional attesting to the merit of plaintiffs' claims. The intent of the statute is to curtail frivolous litigation without preventing access to the courts for meritorious claims. Thus, a failure to comply with the statute, either strictly or substantially, will result in dismissal with prejudice, unless an exception applies.

*Santiago v. Hudson Cnty.*, No. 10-3059 (PGS), 2011 WL 1885411, at *3 (D.N.J. May 18, 2011) (internal citations and quotations omitted.)

An exception is made where the Plaintiff has demonstrated substantial compliance. "[A] plaintiff's failure to produce an affidavit of merit is excused if the plaintiff substantially complied with the statute. This exception is used by courts to "avoid technical defeats of valid claims[.]" *Nash v. New Jersey*, No. 11-3409 (AET), 2013 WL 1010666, at *2 (D.N.J. Mar. 13, 2013) (internal citations and quotations omitted).

> The Court is not required to
>
> slavishly limit [itself] to the dry words of legislation nor rely on mere abstract logic to determine what interpretation of a statute would fulfill the Legislature's purpose. More is called for than a merely mechanical analysis. Machines can perform mechanical tasks, but judgment is necessary to reach a result informed by intelligence. The concept of substantial compliance is as relevant to this statute as

7

to any other. It is a concept that requires a court to go beyond the literal language in order to implement the legislative intent and its policy mandate.

*Mayfield v. Cmty. Med. Assocs., P.A.*, 335 N.J. Super. 198, 205 (App. Div. 2000).

Rather, "[t]he proper limits as to how far a court may go in finding flexibility in the words of the affidavit of merit statute are set forth in [a] five-part test:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.

*Id.* at 206.

In *Santiago v. Hudson County*, the court was faced with an analogous situation. 2011 WL 1885411 (D.N.J. May 18, 2011). Specifically, the defendant therein moved for summary judgment on the Plaintiff's claims of medical malpractice and wrongful death based on the inadequacy of the Plaintiff's affidavit of merit. *Id.* at *2. The Plaintiff cross-moved for an additional 60 days to serve an affidavit of merit. *Id.* at *1. In *Santiago*, the defendant argued that an affidavit of merit from a registered nurse was "insufficient because [the defendant] only employs physicians, physician assistants and nurse practitioners." *Id.* at *3. Thus, according to the defendant, the registered nurse was not "an appropriate licensed person." *Id.* at *2. The *Santiago* court found that the affiant's determination that the treatment of the medical staff was outside of acceptable standards of practice was "sufficient to show the suit was not frivolously brought." *Id.* at *3. The court ultimately determined that summary judgment was inappropriate where it was "unknown whether a registered nurse is substantially different from a nurse practitioner or physician assistant." *Id.* at *4.

Similarly here, the Plaintiff's affidavits of merit establish that the instant matter was not frivolously brought. Additionally, the holding in *Santiago*, coupled with the procedurally early

8

stage of the instant litigation, persuades this Court to reach a more conservative result than dismissal with prejudice, as sought by Defendants. Here, the Court finds that it is likewise unknown whether the professional defendants are substantially different from the proposed affiants for purposes of Plaintiff's cause of action.

In this regard, the Court finds *Jorden v. Glass* informative. No. 09-1715 (JS), 2010 WL 786533 (D.N.J. March 5, 2010). In *Jorden*, as here, the Plaintiff alleged negligent medical treatment. *Id.* at *1. The plaintiff therein provided affidavits of merit prepared by a doctor who specialized in "general internal medicine" and an additional affidavit from a doctor "board certified in internal medicine and cardiology." *Id.* The defendant, a psychiatrist, moved to dismiss asserting that plaintiff's affidavits needed to be obtained from a psychiatrist. *Id.* The plaintiff opposed the motion to dismiss, arguing that the cause of action was not directed to the specialty in psychiatry "but rather to the general treatment of chest pains." *Id.* at *2. The *Jorden* court agreed with the plaintiff's assessment that the treatment did not involve the defendant's specialty in psychiatry. *Id.* In *Jorden*, the court required a showing as to "whether the care or treatment at issue 'involves' the specialty." *Id.* at *2-3. Further, the *Jorden* court stated that "not every alleged malpractice of a specialist 'involves' his or her specialty." *Id.* at *3.

In light of this prudential standard, the Court will allow the case to move forward with discovery. If appropriate, and with the benefit of discovery, the Parties may revisit the propriety of Plaintiff's affidavits of merit in conjunction with summary judgment. At that time, if necessary, the Court will determine whether Plaintiff has complied with the affidavit of merit statute either strictly or substantially. Further, the Court will entertain the Parties' renewed arguments with regard to whether the moving Defendants "treatment of decedent" involved "a

specialized subject matter." *Id.* at *4. In an abundance of caution, Defendants' Motions to Dismiss are denied. Plaintiff's Motions to Amend are MOOT.[3]

## IV. **Conclusion**

After careful consideration, the Court finds that dismissal is inappropriate. For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motions to Dismiss are DENIED. Further, Plaintiff's Motions to Amend are MOOT. An order will be entered consistent with this Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: June 27th, 2013

---

[3] Plaintiff's Motions to Amend, while moot, merit further discussion. For purposes of clarity, the Court notes that a *Ferreira* conference is not required; thus, to the extent Plaintiff seeks such a conference or argues that in absence of such a conference the 120 day period to file an appropriate affidavit of merit is tolled, both contentions are misguided. *See Vitale v. Carrier Clinic, Inc.*, 409 F. App'x 532, 533-536 (3d Cir. 2010) (stating (1) "[T]he plaintiff shall, within 60 days following the date of filing the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person . . . ." (2) "The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause" and (3) "[a]lthough New Jersey's Affidavit of Merit must be applied by federal courts sitting in diversity, the [Plaintiffs] offer no authority for their contention that a federal district court sitting in diversity is required to follow case management procedures imposed on New Jersey trial courts by the New Jersey Supreme Court."). Furthermore, if the Court were to allow amendment at this juncture this would fall well outside of the 120 day parameter afforded by statute. *See Paragon Contractors, Inc. v. Peachtree Condo. Ass'n*, 202 N.J. 415, 425 (2010) (holding "our creation of a tickler system to remind attorneys and their clients about critical filing dates plainly cannot trump the statute. In other words, the absence of a *Ferreira* conference cannot toll the legislatively prescribed time frames.")